# COMMONWEALTH v. W. J. PENDERGAST.

APPEAL BY DEFENDANT FROM THE COURT OF QUARTER SESSIONS OF WASHINGTON COUNTY.

Argued October 22, 1890—Decided January 5, 1891.
[To be reported.]

(*a*) A defendant, charged with selling liquor without license, alleged as a justification, that he had a written appointment as an agent of a liquor dealer residing in another state, and as such agent sold the liquors in question in the original packages in which they were imported into this state by his principal.

(*b*) The only evidence of the agency, so alleged, was the unsupported

Statement of Facts.

testimony of the defendant himself. His written appointment was not produced. The principal was not called to testify, and no effort to procure his attendance was shown. There was no countervailing testimony in rebuttal:

1. It was not error for the court to submit to the jury the bona fides of the defence set up by the defendant, and to charge that his failure to bring to the trial as a witness the man alleged to have been his principal, was a circumstance to be considered as bearing upon the defendant's credibility.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 186, 187 October Term 1890, Sup. Ct.; court below, Nos. 19, 21 August Term 1890, Q. S.

On August 21, 1890, the grand jury returned as a true bill an indictment at No. 19 August Term 1890, of the court below, charging W. J. Pendergast with selling liquor without license, and a second indictment against the same defendant, at No. 21 of the same term, charging the furnishing of liquors to persons of known intemperate habits. To both indictments, the defendant pleaded not guilty.

The two cases were tried together on August 26, 1890, when the commonwealth called witnesses whose testimony tended to show that on August 12, 1890, the defendant made a number of sales of whiskey, in bottles, some of them to men who were known in the community as men of intemperate habits. The witnesses, on cross-examination, described the bottles as enclosed in sealed pasteboard boxes.

The defendant testified, on his own behalf, that in making the sales mentioned by the commonwealth's witnesses, he was acting as the agent of P. Gavin, a liquor dealer of Wheeling, West Va., under a written appointment authorizing him to act as such agent at Washington, Pa.; that the whiskey sold by him was shipped to him from Wheeling by Gavin, each bottle being put up in a separate pasteboard box, sealed at the ends, and the packages, so put up, shipped in a store box; that, upon receiving the box, the defendant removed the packages therefrom and set them on a shelf in the room occupied by him in carrying on business for his principal, and afterwards sold them by the bottle, without opening the pasteboard boxes

Charge of Court below.

in which the bottles were enclosed, or allowing them to be opened in the place of sale ; that the defendant received, as compensation for his services, 50 per cent of the receipts ; and that he did not knowingly sell to any man of intemperate habits, but, on the contrary, took measures to guard against making such sales. The written authority to act as agent for P. Gavin, spoken of in the defendant's testimony, was not produced, nor was Gavin called as a witness.

At the close of the testimony, the court McILVAINE, P. J., charged the jury in part as follows :

The first question that arises is, is the defendant's principal, P. Gavin, a resident of West Virginia, and was the defendant his agent at the time the sale of these spirituous, vinous, malt and brewed liquors complained of was made, and were these liquors the liquors of the principal in West Virginia, P. Gavin ? Was this defendant acting bona fide in selling, as he says he was ?

If you believe there was a bona fide agency, then the next question that arises is, were these liquors shipped in due course of trade and commerce between the state of West Virginia and this state, and were they sold in the original package of commerce as imported from the state of West Virginia, or were the liquors shipped here in original packages which, by this defendant, were broken and separated and retailed so as to suit customers who might wish to buy, but who did not wish to buy the whole of the package. [Did this defendant and P. Gavin enter into this agreement bona fide, exercising a right guaranteed to P. Gavin of West Virginia, of having his liquors imported into this state and sold in the original packages; or, was it merely a semblance of exercising this right granted under the United States constitution, and were these packages pretendedly shipped in the course of trade between the states, and is the arrangement set up a contract merely to evade what is a valid law in this state ? This bears upon the good faith of the claim here set up, that this man was a bona fide agent of P. Gavin, and P. Gavin was bona fide, in the due course of his business, shipping his liquors here for the purpose of selling them as he had a right to sell them under the clause of the constitution regulating commerce between the states.] [2]

### Charge of Court below.

Now, the defendant here claims that this defendant entered into a contract with P. Gavin, and that he is his bona fide agent; that P. Gavin, in the exercise of a right guaranteed to him by the constitution, shipped his liquors in certain packages, and that this man merely received them as his agent, and that they were sold here as imported from the state of West Virginia, under the right guaranteed him by the constitution of the United States; and that he made no sales except as agent of P. Gavin, and that he made no sales except in the original package of commerce. Now, gentlemen, if you believe that, then, under the law as we have given it to you, the Brooks law would be inoperative.

But the commonwealth, on the other hand, admitting the constitutional right set up by the defendant, claims that this is not such a case, and that the defendant, in his own testimony, has not made out such a case as comes within this constitutional right, and that, therefore, the Brooks law is operative. [The commonwealth claims that this man has failed to show that there was an agency; they have commented on the fact that he goes on the stand and swears to that fact, that there was an agency; but that he failed to bring here the man who owned these liquors, the man who set up this agency, the man who had the right under the constitution to make sales in this way; that he is absent, and not called. Now, gentlemen, this bears upon the credibility of the story of this defendant, and it is a fact in the case which you will take into consideration, the fact that the man who owned the liquors, who was exercising the constitutional right, is absent from this trial and not here to corroborate this defendant in his story that he was acting as his agent and was selling his liquor as imported liquor sent here by him.] [3] The commonwealth further claims that this defence set up is not bona fide, from the fact that the liquors, as sold by the defendant, were in small bottles, half-pints or less, covered with pasteboard; and that the sealing in these pasteboard boxes of these bottles did not constitute such packages as are recognized as original packages in the world of commerce, in a business of this kind.

Now, gentlemen, these are questions for you, and it is for you to say whether or not the defendant has made out his defence as set up; because the burden is on him, or rather the

burden is on him to introduce enough evidence to create a rea-
sonable doubt of the sufficiency of the commonwealth's prima
facie case ; because the burden is always on the commonwealth
to make out her case beyond a reasonable doubt. . . . .

The defendant requests us to charge :

4. That in all matters where federal and state laws conflict,
the state must give way to the federal law ; such being the case,
the indictment, charging the defendant Pendergast with " sell-
ing liquors without license," being drawn under an act of as-
sembly of May 13, 1887, being in conflict with the federal law
of the land, if the defendant sold in the original package, is
of no binding effect and should give way, and your verdict
should be, not guilty.

Answer : Affirmed, subject to what we have said in the gen-
eral charge.

—The jury returned a verdict of guilty as indicted, in each
case.    Thereupon, the court sentenced the defendant, upon the
indictment for selling liquor without license, to pay the costs
of prosecution and a fine of $500, and to undergo imprisonment
in the Allegheny county workhouse for four months ; and, on
the other indictment, to pay the costs of prosecution and a fine
of $50, and to undergo imprisonment in the Allegheny County
Workhouse for thirty days after the expiration of the preced-
ing sentence.    Thereupon the defendant, having obtained spe-
cial allocaturs from Mr. Justice CLARK, took these appeals,
specifying that the court erred :

1. In submitting to the jury the bona fides of the defendant's
agency for P. Gavin.

2, 3. In the portions of the charge embraced in [ ] [2] [3]

4. " In adding the qualification, ' subject to what we have said
in the general charge,' to the affirmation of defendant's fourth
point."

5. In sentencing the defendant to imprisonment in the work-
house of Allegheny county.

*Mr. John S. Robb* (with him *Mr. John S. Robb, Jr.*), for the
appellant :

There was nothing to justify the district attorney's argument
to the jury that the agency was not bona fide, and the submis-
sion of the question whether it was so, was unwarranted.    There

was positive evidence of the agency, and none in contradiction. The fact that the principal did not see fit to come into this state to testify at the trial, had no bearing on that question. He was beyond the reach of process, and could not be compelled to come. Moreover, if he had come, he would doubtless have had to encounter the hazard and expense of a trial for the acts of the agent. Under the decisions in Leisy v. Hardin, 135 U. S. 100, and Lyng v. Michigan, 135 U. S. 161, there could not have been a conviction, save for the errroneous rulings of the court referred to. The qualification in the answer to the fourth point, rendered it of no possible value, and had a tendency to mislead the jury: Huddleston v. West Bellevue Bor., 111 Pa. 122. Moreover, the sentence was erroneous: § 15, act of May 13, 1887, P. L. 108.

*Mr. W. S. Parker*, District Attorney, for the commonwealth, filed no printed brief.

OPINION, MR. CHIEF JUSTICE PAXSON:

The defendant was convicted in the court below upon two indictments, one charging him with selling liquor without a license, and the other with selling to persons of known intemperate habits. An appeal was taken in each case, but, as no error is assigned in the last case, No. 187 of this court, No. 21 in the court below, we affirm that case without comment. Most of the questions involved have been disposed of in the cases of Commonwealth v. Zelt, ante, 615, and Commonwealth v. Swihart, ante, 629, decided at this term upon appeals from the same court.

Complaint is made in the first three assignments that the court below erred in submitting to the jury the question whether the defendant was a bona fide agent of P. Gavin, of Wheeling, W. Va., to sell the liquor in question, and in the comments of the court upon this question in the charge to the jury. It was alleged that " there was positive evidence that defendant was such agent in good faith, and no evidence whatever to contradict it." The only evidence in the case was the statement of the defendant himself. He testified to the agency, but was wholly unsupported. His principal was not called, nor does any effort appear to have been made to procure his

attendance at the trial. The defendant was not bound, as a matter of law to produce him, but his absence left his testimony unsupported, and, the evidence being oral, it was for the jury to pass upon its credibility. Aside from this, the defendant testified that he had written authority from his principal to act as his agent, yet the writing was not produced. Strictly speaking, he had no right to testify to the contents of this paper; it should have been produced, so that the court and jury could judge of its force and effect. The non-production of this paper was a grave omission, and justified all the learned judge said about it; and, moreover, justified the jury in the conclusion that this defence was not set up in good faith. The fourth assignment does not conform to our rules, and the fifth is disposed of by what was said in the cases above referred to.

> The judgment is affirmed, in each case; and it is now ordered that the defendant surrender himself to the custody of the high sheriff of Washington county, for confinement in accordance with the sentence of the court below.